FILED

10-2-2015

OCT 02 2015

JUDGE REBECCA R. PALLMEYER
UNITED STATES DISTRICT COURT

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA

v.

SHERWIN CUBELO

No. 14 CR 732-2

Judge Rebecca R. Pallmeyer

## PLEA AGREEMENT

1.     This Plea Agreement between the United States Attorney for the Northern District of Illinois, ZACHARY T. FARDON, and defendant SHERWIN CUBELO, and his attorney, GARETH MORRIS, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure and is governed in part by Rule 11(c)(1)(B), as more fully set forth below. The parties to this Agreement have agreed upon the following:

## Charge in This Case

2.     The superseding indictment in this case charges defendant with conspiracy to commit health care fraud, in violation of Title 18, United States Code, Section 1349.

3.     Defendant has read the charge against him contained in the superseding indictment, and that charge has been fully explained to him by his attorney.

4.     Defendant fully understands the nature and elements of the crime with which he has been charged.

## Charge to Which Defendant Is Pleading Guilty

5.      By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty to Count One of the superseding indictment, which charges defendant with conspiracy to commit health care fraud, in violation of Title 18, United States Code, Section 1349.  In addition, as further provided below, defendant agrees to the entry of a forfeiture judgment.

## Factual Basis

6.      Defendant will plead guilty because he is in fact guilty of Count One of the superseding indictment, which charges him with conspiracy to commit health care fraud, in violation of Title 18, United States Code, Section 1349. In pleading guilty, defendant admits the following facts and that those facts establish his guilt beyond a reasonable doubt, and establish a basis for forfeiture of the property described elsewhere in this Plea Agreement:

From in or around May 2008 and continuing through in or around June 2012, at Cook County, in the Northern District of Illinois, SHERWIN CUBELO did conspire with Josephine Tinimbang, Janet Guerrero, Administrator A, and others known and unknown, to violate Title 18, United States Code, Section 1347, that is, knowingly and willfully to execute a scheme and artifice to defraud a health care benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, Medicare, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody

and control of, said health care benefit program, in connection with the delivery of and payment for health care benefits, items, and services.

### The Home Health Care Companies

Donnarich Home Health Care, Inc. and Josdan Home Health Care Inc. were home health care companies located in Lincolnwood, Illinois. Pathways Home Health Services LLC was a home health care company that started out in Glenview, Illinois and later moved to Lincolnwood, Illinois. Donnarich, Josdan, and Pathways purported to provide home health care services to beneficiaries insured by Medicare.

Medicare covered home health care services when beneficiaries were "homebound," or confined to the home. Home health care services were provided in 60-day periods of care, or "episodes." Medicare required a physician to certify each beneficiary as homebound in connection with every episode of care.

Josephine Tinimbang was an owner of Donnarich, Josdan, and Pathways. Administrator A was an administrator of Donnarich and Josdan. Janet Guerrero was the Office Manager of Josdan.

### The Conspiracy to Defraud

The defendant was a marketer, that is, a patient recruiter. His sole responsibility at Donnarich, Josdan, and Pathways was to supply the companies with Medicare beneficiaries who were willing to be visited by nurses and doctors regardless of whether they actually needed home health care. In return, the defendant received monetary payments on a per-patient basis. The defendant was aware that it was

unlawful for him to receive these payments, and that it was unlawful for those who paid him to make the payments.

Before the defendant began supplying beneficiaries to Donnarich, Josdan, and Pathways, he had in-person meetings with Josephine Tinimbang and Administrator A. The three individuals discussed the defendant's methods for recruiting patients and agreed on the manner in which he would be paid. The defendant subsequently began supplying patients, and he received payments from Josephine Tinimbang, Administrator A, Janet Guerrero, and others.

The payments to the defendant for supplying beneficiaries changed over time. At times, the defendant received $500 per beneficiary he supplied, per episode of home health care. He later received $600 per beneficiary, per episode of care. Later still, the defendant received $1,200 per beneficiary, with the expectation that each beneficiary would be enrolled for three episodes of home health care. When the defendant's payment arrangements changed, he discussed the changes and reached agreement with Josephine Tinimbang.

The defendant relayed information about the beneficiaries he supplied to Donnarich, Josdan, and Pathways by text message and by telephone. In doing so, the defendant provided personal identifying information about the beneficiaries, such as their name, date of birth, Medicare number, address, and telephone number. The defendant supplied this information to Josephine Tinimbang, Janet Guerrero, and others.

From approximately April 2008 to June 2012, the defendant supplied Donnarich, Josdan, and Pathways with hundreds of Medicare beneficiaries. He received more than $300,000 worth of unlawful bribe and kickback payments in return.

In 2010 or before, the defendant started using a portion of the funds he received from Donnarich, Josdan, and Pathways to make regular payments to the Medicare beneficiaries he recruited. He made these payments so that the beneficiaries would agree to see nurses and doctors regardless of whether they needed the care. In addition, the defendant used the beneficiaries he recruited as subordinate recruiters. He did so by making incentive payments to any patient who provided him with an additional beneficiary he could supply to Donnarich, Josdan, or Pathways.

On occasion, when the defendant was late in making payments to his beneficiaries, the beneficiaries attempted to extract their payments by threatening to report the defendant's conduct to Medicare. At other times, the defendant's beneficiaries called the home health care companies to ask about their payments. Josephine Tinimbang, Janet Guerrero, and others were aware that the defendant was paying his beneficiaries, because Tinimbang, Guerrero, and others called the defendant to advise him that his beneficiaries were calling the office asking for their payments. The defendant was aware that it was unlawful to make payments to the beneficiaries.

At times, the defendant, Josephine Tinimbang, and others attempted to conceal the unlawful nature of their conduct. In March 2011, for instance, after being told to do so by Josephine Tinimbang, the defendant executed an Independent Contractor Agreement. The agreement stated that the defendant would be paid for providing

"home health consulting," "community benefit services," and "other services designated by the Company from time-to-time." In fact, the defendant's sole responsibility continued to be supplying Medicare beneficiaries, and he continued to receive payments in exchange for doing so. The contract was signed by Josephine Tinimbang and the defendant. At Josephine Tinimbang's suggestion, the signatures on the contract were backdated to January 2010.

In or around March 2010, Josephine Tinimbang told the defendant to create a company, and Administrator A created and submitted incorporation documents for the company to the Illinois Secretary of State. Defendant Cubelo then became the President of All In One Marketing Agency Inc., a company located in Hammond, Indiana and registered in the State of Illinois. After the company was created, the defendant received payments to All In One Marketing in return for the patients he referred to Josdan and Pathways, and the defendant used the company to make payments to the beneficiaries he recruited.

Many of the Medicare beneficiaries the defendant supplied to Donnarich, Josdan, and Pathways were not homebound. The defendant knew that the beneficiaries were required to be homebound to qualify for home health care, and that many of his beneficiaries did not meet that requirement. The defendant knew his beneficiaries were not homebound for a number of reasons, such as being told when he called the beneficiaries that they were not at home; or seeing the beneficiaries outside their homes, moving about without difficulty. Indeed, there were occasions when Josephine Tinimbang, Janet Guerrero, and other employees of the home health care

companies called the defendant and informed him that a doctor had visited one of his beneficiaries and determined that the beneficiary did not qualify for home health care services.

When the defendant received such calls from Josephine Tinimbang, Janet Guerrero, and others, these individuals did not tell defendant that the beneficiaries he referred could not be enrolled in home health care. Rather, they often informed the defendant that although one doctor had found that a beneficiary he referred did not qualify for home health care, the company would simply send a different doctor to visit the patient. Ultimately, almost all of the beneficiaries the defendant supplied were enrolled in home health care by Donnarich, Josdan, and Pathways, and subjected to nurse and doctor visits regardless of whether they needed them. It was the defendant's understanding that these companies then submitted claims for those beneficiaries to Medicare regardless of whether they were homebound.

In sum, the defendant, Josephine Tinimbang, Janet Guerrero, Administrator A, and others agreed that Donnarich, Josdan, and Pathways would submit, and they in fact caused the companies to submit, fraudulent claims to Medicare for home health care services the beneficiaries did not qualify for or need. Based solely on the number of non-homebound beneficiaries the defendant supplied to the three companies in exchange for unlawful bribes and kickbacks, Medicare paid Donnarich, Josdan, and Pathways approximately $1,180,505.

7.    The foregoing facts are set forth solely to assist the Court in determining whether a factual basis exists for defendant's plea of guilty and criminal forfeiture, and

are not intended to be a complete or comprehensive statement of all the facts within defendant's personal knowledge regarding the charged crime and related conduct.

## Maximum Statutory Penalties

8.     Defendant understands that the charge to which he is pleading guilty carries the following statutory penalties:

a.     A maximum sentence of 10 years' imprisonment. This offense also carries a maximum fine of $250,000, or twice the gross gain or gross loss resulting from that offense, whichever is greater. Defendant further understands that the judge also may impose a term of supervised release of not more than three years.

b.     Defendant further understands that the Court must order restitution to the victims of the offense in an amount determined by the Court.

c.     In accord with Title 18, United States Code, Section 3013, defendant will be assessed $100 on the charge to which he has pled guilty, in addition to any other penalty or restitution imposed.

## Sentencing Guidelines Calculations

9.     Defendant understands that in imposing sentence the Court will be guided by the United States Sentencing Guidelines. Defendant understands that the Sentencing Guidelines are advisory, not mandatory, but that the Court must consider the Guidelines in determining a reasonable sentence.

10.     For purposes of calculating the Sentencing Guidelines, the parties agree on the following points:

a.   **Applicable Guidelines**. The Sentencing Guidelines to be considered in this case are those in effect at the time of sentencing. The following statements regarding the calculation of the Sentencing Guidelines are based on the Guidelines Manual currently in effect, namely the November 2014 Guidelines Manual.

b.   **Offense Level Calculations**.

i.   The base offense level is 6, pursuant to Guideline § 2B1.1(a)(2).

ii.   The loss amount to Medicare is greater than $1,000,000 but not more than $2,500,000. Therefore, pursuant to Guideline § 2B1.1(b)(1)(I), the base offense level is increased by 16 levels.

iii.   The offense of conviction is a Federal health care offense involving a Government health care program and the loss amount to Medicare is more than $1 million. Therefore, the offense level is increased by 2 levels under Guideline § 2B1.1(b)(7).

iv.   The defendant was a manager or supervisor of extensive criminal activity that involved five or more participants. Pursuant to Guideline § 3B1.1(b), the base offense level is increased by 3 levels.

v.   Defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for his criminal conduct. If the government does not receive additional evidence in conflict with this provision, and if defendant continues to accept responsibility for his actions within the meaning of Guideline § 3E1.1(a), including by furnishing the United States Attorney's Office and

the Probation Office with all requested financial information relevant to his ability to satisfy any fine or restitution that may be imposed in this case, a two-level reduction in the offense level is appropriate.

vi.     In accord with Guideline § 3E1.1(b), defendant has timely notified the government of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the Court to allocate its resources efficiently. Therefore, as provided by Guideline § 3E1.1(b), if the Court determines the offense level to be 16 or greater prior to determining that defendant is entitled to a two-level reduction for acceptance of responsibility, the government will move for an additional one-level reduction in the offense level.

c.     **Criminal History Category**. With regard to determining defendant's criminal history points and criminal history category, based on the facts now known to the government, defendant's criminal history points equal zero and defendant's criminal history category is I.

d.     **Anticipated Advisory Sentencing Guidelines Range**. Therefore, based on the facts now known to the government, the anticipated offense level is 24, which, when combined with the anticipated criminal history category of I, results in an anticipated advisory sentencing guidelines range of 51 to 63 months' imprisonment, in addition to any supervised release, fine, and restitution the Court may impose.

e.     Defendant and his attorney and the government acknowledge that the above guidelines calculations are preliminary in nature and based on facts known

to the parties as of the time of this Agreement. Defendant understands that the Probation Office will conduct its own investigation and that the Court ultimately determines the facts and law relevant to sentencing, and that the Court's determinations govern the final guidelines calculation. Accordingly, the validity of this Agreement is not contingent upon the probation officer's or the Court's concurrence with the above calculations, and defendant shall not have a right to withdraw his plea on the basis of the Court's rejection of these calculations.

      f.    Both parties expressly acknowledge that while none of the guidelines calculations set forth above are binding on the Court or the Probation Office, the parties have agreed pursuant to Fed. R. Crim. P. 11(c)(1)(B) that certain components of those calculations—specifically, those set forth above in subparagraph (b)(i) – (b)(iv) of this paragraph—are binding on the parties, and it shall be a breach of this Agreement for either party to present or advocate a position inconsistent with the agreed calculations set forth in the identified subparagraphs, except that if the applicable Sentencing Guidelines have been amended by the time of sentencing, the parties will apply the new guidelines if they are more favorable to the defendant.

      g.    Errors in applying or interpreting any of the sentencing guidelines may be corrected by either party prior to sentencing. The parties may correct these errors either by stipulation or by a statement to the Probation Office or the Court, setting forth the disagreement regarding the applicable provisions of the guidelines. The validity of this Agreement will not be affected by such corrections, and defendant

shall not have a right to withdraw his plea, nor the government the right to vacate this Agreement, on the basis of such corrections.

## Cooperation

11.     Defendant agrees he will fully and truthfully cooperate in any matter in which he is called upon to cooperate by a representative of the United States Attorney's Office for the Northern District of Illinois. This cooperation shall include providing complete and truthful information in any investigation and pre-trial preparation and complete and truthful testimony in any criminal, civil, or administrative proceeding. Defendant agrees to the postponement of his sentencing until after the conclusion of his cooperation.

## Agreements Relating to Sentencing

12.     At the time of sentencing, the government shall make known to the sentencing judge the extent of defendant's cooperation. If the government determines that defendant has continued to provide full and truthful cooperation as required by this Agreement, then the government shall move the Court, pursuant to Guideline § 5K1.1, to depart downward from the low end of the applicable guideline range, and shall recommend a sentence that includes a term of imprisonment in the custody of the Bureau of Prisons of 60 percent of the low end of the applicable guidelines range. Defendant shall be free to recommend any sentence. Defendant understands that the decision to depart from the applicable guideline range, and the extent of any departure, rest solely with the Court.

13.    If the government does not move the Court, pursuant to Guideline § 5K1.1, to depart from the applicable guideline range, as set forth above, the preceding paragraph of this Agreement will be inoperative, both parties shall be free to recommend any sentence, and the Court shall impose a sentence taking into consideration the factors set forth in 18 U.S.C. § 3553(a) as well as the Sentencing Guidelines without any downward departure for cooperation pursuant to § 5K1.1. Defendant may not withdraw his plea of guilty because the government has failed to make a motion pursuant to Guideline § 5K1.1.

14.    It is understood by the parties that the sentencing judge is neither a party to nor bound by this Agreement and may impose a sentence up to the maximum penalties as set forth above. Defendant further acknowledges that if the Court does not accept the sentencing recommendation of the parties, defendant will have no right to withdraw his guilty plea.

15.    If, in its sole discretion, the government determines subsequent to defendant's sentencing in this case that defendant has provided substantial assistance, as described in Fed. R. Crim. P. 35(b)(2), which assistance has not been taken into account by the parties in fashioning the sentencing agreement in this case, and is not taken into account by the Court in imposing sentence, then the government will move for a reduction in his sentence pursuant to Fed. R. Crim. P. 35(b)(4). Defendant understands that it is solely within the government's discretion whether to move for a reduction in his sentence, and he agrees not to challenge the government's decision if it

determines in its discretion that such a motion is not appropriate. Defendant also understands that should the government seek such a reduction as outlined above, it is solely within the Court's discretion to grant or reject such a request, and to determine the extent of any reduction.

16.     Regarding restitution, defendant acknowledges that pursuant to Title 18, United States Code, Section 3663A, the Court must order defendant, together with any jointly liable co-defendants, to make full restitution to the Medicare program in an amount to be determined by the Court at sentencing, which amount shall reflect credit for any funds repaid prior to sentencing.

17.     Restitution shall be due immediately, and paid pursuant to a schedule to be set by the Court at sentencing. Defendant acknowledges that pursuant to Title 18, United States Code, Section 3664(k), he is required to notify the Court and the United States Attorney's Office of any material change in economic circumstances that might affect his ability to pay restitution.

18.     Defendant agrees to pay the special assessment of $100 at the time of sentencing with a cashier's check or money order payable to the Clerk of the U.S. District Court.

19.     Defendant agrees that the United States may enforce collection of any fine or restitution imposed in this case pursuant to Title 18, United States Code, Sections 3572, 3613, and 3664(m), notwithstanding any payment schedule set by the Court.

### Forfeiture

20.     Defendant understands that by pleading guilty, he will subject to forfeiture to the United States all right, title, and interest that he has in any property constituting or derived from proceeds obtained, directly or indirectly, as a result of the offense.

21.     Defendant agrees to the entry of a personal money judgment in the amount of $1,193,100, which represents the total amount of proceeds traceable to his participation in the offense. Defendant consents to the immediate entry of a preliminary order of forfeiture setting forth the amount of the personal money judgment he will be ordered to pay.

22.     Defendant admits that because the directly forfeitable property is no longer available for forfeiture as described in Title 21, United States Code, Section 853(p)(1), the United States is entitled to seek forfeiture of any other property of defendant, up to the value of the personal money judgment, as substitute assets pursuant to Title 21, United States Code, Section 853(p)(2), including but not limited to funds in the amount of $9,172.50 that were contained in the Chase bank account ending in 0031, held in the name of All In One Marketing Agency Inc., as of December 30, 2014.

23.     Defendant understands that forfeiture shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon defendant in addition to the forfeiture judgment. In this case, however, the United States Attorney's Office will recommend to the Attorney General that any

net proceeds derived from any forfeited assets be remitted or restored to eligible victims of the offense pursuant to Title 18, United States Code, Section 981(e), Title 28, Code of Federal Regulations, Part 9, and other applicable law.

24.     Defendant agrees to waive all constitutional, statutory, and equitable challenges in any manner, including but not limited to direct appeal or a motion brought under Title 28, United States Code, Section 2255, to any forfeiture carried out in accordance with this agreement on any grounds, including that the forfeiture constitutes an excessive fine or punishment.

## Acknowledgments and Waivers Regarding Plea of Guilty

### Nature of Agreement

25.     This Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in case 14 CR 732.

26.     This Agreement concerns criminal liability only. Except as expressly set forth in this Agreement, nothing herein shall constitute a limitation, waiver, or release by the United States or any of its agencies of any administrative or judicial civil claim, demand, or cause of action it may have against defendant or any other person or entity. The obligations of this Agreement are limited to the United States Attorney's Office for the Northern District of Illinois and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities, except as expressly set forth in this Agreement.

## Waiver of Rights

27.     Defendant understands that by pleading guilty he surrenders certain rights, including the following:

a.      **Trial rights**. Defendant has the right to persist in a plea of not guilty to the charge against him, and if he does, he would have the right to a public and speedy trial.

i.      The trial could be either a jury trial or a trial by the judge sitting without a jury. However, in order that the trial be conducted by the judge sitting without a jury, defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

ii.     If the trial is a jury trial, the jury would be composed of twelve citizens from the district, selected at random. Defendant and his attorney would participate in choosing the jury by requesting that the Court remove prospective jurors for cause where actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges.

iii.    If the trial is a jury trial, the jury would be instructed that defendant is presumed innocent, that the government has the burden of proving defendant guilty beyond a reasonable doubt, and that the jury could not convict him unless, after hearing all the evidence, it was persuaded of his guilt beyond a reasonable doubt. The jury would have to agree unanimously before it could return a verdict of guilty or not guilty.

iv.     If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, whether or not the judge was persuaded that the government had established defendant's guilt beyond a reasonable doubt.

v.      At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and his attorney would be able to cross-examine them.

vi.     At a trial, defendant could present witnesses and other evidence in his own behalf. If the witnesses for defendant would not appear voluntarily, he could require their attendance through the subpoena power of the Court. A defendant is not required to present any evidence.

b.      At a trial, defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify in his own behalf.

### Waiver of appellate and collateral rights

28.     Defendant further understands he is waiving all appellate issues that might have been available if he had exercised his right to trial. Defendant is aware that Title 28, United States Code, Section 1291, and Title 18, United States Code, Section 3742, afford a defendant the right to appeal his conviction and the sentence imposed. Acknowledging this, if the government makes a motion at sentencing for a

downward departure pursuant to Guideline § 5K1.1, defendant knowingly waives the right to appeal his conviction, any pre-trial rulings by the Court, and any part of the sentence (or the manner in which that sentence was determined), including any term of imprisonment and fine within the maximums provided by law, and including any order of restitution or forfeiture, in exchange for the concessions made by the United States in this Agreement. In addition, if the government makes a motion at sentencing for a downward departure pursuant to Guideline § 5K1.1, defendant also waives his right to challenge his conviction and sentence, and the manner in which the sentence was determined, in any collateral attack or future challenge, including but not limited to a motion brought under Title 28, United States Code, Section 2255. The waiver in this paragraph does not apply to a claim of involuntariness or ineffective assistance of counsel, nor does it prohibit defendant from seeking a reduction of sentence based directly on a change in the law that is applicable to defendant and that, prior to the filing of defendant's request for relief, has been expressly made retroactive by an Act of Congress, the Supreme Court, or the United States Sentencing Commission.

29.     Defendant understands that by pleading guilty he is waiving all the rights set forth in the prior paragraphs. Defendant's attorney has explained those rights to him, and the consequences of his waiver of those rights.

## Presentence Investigation Report/Post-Sentence Supervision

30.     Defendant understands that the United States Attorney's Office in its submission to the Probation Office as part of the Pre-Sentence Report and at sentencing shall fully apprise the District Court and the Probation Office of the nature,

scope, and extent of defendant's conduct regarding the charge against him, and related matters. The government will make known all matters in aggravation and mitigation relevant to sentencing, including the nature and extent of defendant's cooperation.

31.     Defendant agrees to truthfully and completely execute a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the Probation Office, and the United States Attorney's Office regarding all details of his financial circumstances, including his recent income tax returns as specified by the probation officer. Defendant understands that providing false or incomplete information, or refusing to provide this information, may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to Guideline § 3E1.1 and enhancement of his sentence for obstruction of justice under Guideline § 3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001 or as a contempt of the Court.

32.     For the purpose of monitoring defendant's compliance with his obligations to pay a fine and restitution during any term of supervised release or probation to which defendant is sentenced, defendant further consents to the disclosure by the IRS to the Probation Office and the United States Attorney's Office of defendant's individual income tax returns (together with extensions, correspondence, and other tax information) filed subsequent to defendant's sentencing, to and including the final year of any period of supervised release or probation to which defendant is sentenced. Defendant also agrees that a certified copy of this Agreement shall be sufficient

evidence of defendant's request to the IRS to disclose the returns and return information, as provided for in Title 26, United States Code, Section 6103(b).

## Other Terms

33.     Defendant agrees to cooperate with the United States Attorney's Office in collecting any unpaid fine and restitution for which defendant is liable, including providing financial statements and supporting records as requested by the United States Attorney's Office.

34.     Defendant will not object to a motion brought by the United States Attorney's Office for the entry of an order authorizing disclosure of documents, testimony and related investigative materials which may constitute grand jury material, preliminary to or in connection with any judicial proceeding, pursuant to Fed. R. Crim. P. 6(e)(3)(E)(i). In addition, defendant will not object to the government's solicitation of consent from third parties who provided records or other materials to the grand jury pursuant to grand jury subpoenas, to turn those materials over to the Civil Division of the United States Attorney's Office, or an appropriate federal or state agency (including but not limited to the Internal Revenue Service), for use in civil or administrative proceedings or investigations, rather than returning them to the third parties for later summons or subpoena in connection with a civil or administrative proceeding involving, or investigation of, defendant. Nothing in this paragraph or the preceding paragraph precludes defendant from asserting any legal or factual defense to taxes, interest, and penalties that may be assessed by the IRS.

35.     Defendant understands that, if convicted, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

## Conclusion

36.     Defendant understands that this Agreement will be filed with the Court, will become a matter of public record, and may be disclosed to any person.

37.     Defendant understands that his compliance with each part of this Agreement extends throughout the period of his sentence, and failure to abide by any term of the Agreement is a violation of the Agreement. Defendant further understands that in the event he violates this Agreement, the government, at its option, may move to vacate the Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this Agreement, or may move to resentence defendant or require defendant's specific performance of this Agreement. Defendant understands and agrees that in the event that the Court permits defendant to withdraw from this Agreement, or defendant breaches any of its terms and the government elects to void the Agreement and prosecute defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecutions.

38.     Should the judge refuse to accept defendant's plea of guilty, this Agreement shall become null and void and neither party will be bound to it.

39.     Defendant and his attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Agreement, to cause defendant to plead guilty.

40.     Defendant acknowledges that he has read this Agreement and carefully reviewed each provision with his attorney. Defendant further acknowledges that he understands and voluntarily accepts each and every term and condition of this Agreement.

AGREED THIS DATE: ___10|2|2015___

ZACHARY T. FARDON
United States Attorney

SHERWIN CUBELO
Defendant

BROOKE HARPER
Trial Attorney

GARETH MORRIS
Attorney for Defendant