**FILED**

SEP 0 7 2016

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JUDGE REBECCA R. PALLMEYER
UNITED STATES DISTRICT COURT

| | |
|---|---|
| UNITED STATES OF AMERICA | No. 14 CR 732 |
| v. | |
| SHARON GULLA | Judge Rebecca R. Pallmeyer |

## PLEA AGREEMENT

1.     This Plea Agreement between the United States Attorney for the Northern District of Illinois, ZACHARY T. FARDON, and defendant SHARON GULLA, and her attorney, DENNIS GIOVANNINI, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure. The parties to this Agreement have agreed upon the following:

## Charge in This Case

2.     The fourth superseding indictment in this case charges defendant with conspiracy to commit health care fraud, in violation of Title 18, United States Code, Section 1349 (Count 1).

3.     Defendant has read the charge against her contained in the fourth superseding indictment, and that charge has been fully explained to her by her attorney.

4.     Defendant fully understands the nature and elements of the crime with which she has been charged.

## **Charge to Which Defendant Is Pleading Guilty**

5.     By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty to Count 1 of the fourth superseding indictment, which charges defendant with conspiracy to commit health care fraud, in violation of Title 18, United States Code, Section 1349.

## **Factual Basis**

6.     Defendant will plead guilty because she is in fact guilty of the charge contained in Count 1 of the fourth superseding indictment. In pleading guilty, defendant admits the following facts and that those facts establish her guilt beyond a reasonable doubt:

From in or around January 2008 and continuing through in or around March 2014, at Cook County, in the Northern District of Illinois, SHARON GULLA did conspire with Josephine Tinimbang, Richard Tinimbang, Administrator B, Janet Guerrero, Monette Mojares, Avelina Fiel, Jose Calub, Jerilyn Deguzman, Marilou Lozano, Isabelita Sabejon, and others known and unknown, to violate Title 18, United States Code, Section 1347, that is, knowingly and willfully to execute a scheme and artifice to defraud a health care benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, Medicare, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, said health care benefit

2

program, in connection with the delivery of and payment for health care benefits, items, and services.

### The Home Health Care Companies

Donnarich Home Health Care, Inc. and Josdan Home Health Care Inc. were home health care companies located in Lincolnwood, Illinois. Pathways Home Health Services LLC was a home health care company that started out in Glenview, Illinois and later moved to Lincolnwood, Illinois. Donnarich, Josdan, and Pathways purported to provide home health care services to beneficiaries insured by Medicare.

Medicare covered home health care services when beneficiaries were "homebound," or confined to the home. Home health care services were provided in 60-day periods of care, or "episodes." Medicare required a physician to certify each beneficiary as homebound in connection with every episode of care.

Medicare also required a registered nurse to complete a comprehensive health assessment, known as an OASIS assessment, for each beneficiary at the start of every episode of home health care. As part of the OASIS assessment, Medicare required the registered nurse to independently assess whether the beneficiary was homebound. The OASIS information was transmitted to Medicare, and Medicare used the information to determine how much to pay the home health care company for each episode of care. The sicker the patient appeared to be according to the OASIS assessment, the more Medicare paid for the episode of care.

The following individuals had the following roles during relevant periods:

3

- Josephine Tinimbang was an owner of Donnarich, Josdan and Pathways.

- Richard Tinimbang was an administrator of Donnarich and Josdan, and appeared to be an owner of Pathways.

- Administrator B was the day-to-day manager at Pathways and held the title of Administrator. She consulted with Richard Tinimbang before making decisions.

- Janet Guerrero was the Office Manager of Josdan.

- Monette Mojares was Director of Quality Assurance at Josdan.

- Avelina Fiel was the Director of Nursing at Pathways.

- Jose Calub was the medical director at Josdan and Pathways.

- Jerilyn Deguzman, Marilou Lozano, and Isabelita Sabejon were registered nurses who enrolled Medicare beneficiaries in home health care at Josdan and Pathways. Deguzman also worked briefly as a supervisory nurse at Josdan.

### The Conspiracy to Defraud

The defendant was a registered nurse licensed to practice medicine in the State of Illinois. Starting in 2008, defendant worked in turn at Donnarich, Josdan, and Pathways. In approximately April 2009, defendant became the Director of Nursing at Josdan, a position she remained in for several months. Defendant subsequently stepped down to become the Assistant Director of Nursing. She remained in that position until approximately November 2011, when she transferred to become the lead executive (or "administrator") at Pathways. After several months, defendant transitioned to become the Assistant Director of Nursing and a Quality Assurance Supervisor, positions she held simultaneously at Pathways. In every year from 2009

4

forward and regardless of her role, defendant earned more than $100,000 per year from Donnarich, Josdan and Pathways.

Defendant understood that patients enrolled in home health care at Josdan and Pathways were insured by Medicare, and Medicare required patients to be homebound and have a need for skilled care. Yet defendant knew that many of the patients enrolled at Josdan and Pathways were not homebound and did not need skilled care. Defendant knew this for several reasons, including the following (among others):

- Registered nurses who visited patients in their homes, including Jerilyn Deguzman, Marilou Lozano, and Isabelita Sabejon, informed defendant that patients they saw were not homebound, and accurately described to defendant the fact that the patients were not taking medications and did not have medical conditions requiring skilled care. Defendant instructed these nurses to enroll such patients in home health care anyway.

- Defendant participated in meetings at Josdan during which Monette Mojares pressed nurses like Deguzman to change their OASIS forms to make it appear that patients qualified for care and could be enrolled, when the nurses – who had seen the patients – had already determined the patients did not qualify and should not be enrolled.

- Defendant participated in the practice of patient recycling, pursuant to which patients were enrolled for approximately six months, discharged for several weeks, re-enrolled for approximately six months, and so on, with the process repeating for up to several years or until the patient refused to be enrolled for further services. At Josdan, defendant instructed at least one supervising nurse, Jerilyn Deguzman, to vary the length of patient discharges so that they would not appear to be systematic to Medicare. At Pathways, defendant personally monitored the lengths of patient enrollments and discharges, and instructed office staff – when the recycling schedule dictated it – that patients were to be discharged or re-admitted. Defendant was aware that the recycling practice was not based on the medical conditions or needs of the patients and that patients who were subjected to the practice were not homebound and/or did not need skilled care.

- Defendant was aware that the physicians who signed orders approving the company's services would approve home health care services for anyone, regardless of whether they were homebound or needed skilled nursing care. In particular, at Josdan and Pathways, defendant and others relied on the in-house medical director, Dr. Jose Calub, to sign orders authorizing home health care when other physicians refused to do so. At Pathways, defendant personally instructed office staff to refer

patients to second doctors after one doctor had already refused to order the services. Defendant was also aware that Administrator B told an office employee not to record the fact that patients were not homebound on a document that was routinely kept in patients' medical files. Defendant was aware of this because defendant attended the meeting at which the office employee was so instructed.

In sum, while defendant was employed at Pathways, the defendant, Josephine Tinimbang, Richard Tinimbang, Administrator B, Avelina Fiel, Jose Calub, Jerilyn Deguzman, Marilou Lozano, Isabelita Sabejon, and others agreed that Pathways would submit, and in fact caused Pathways to submit, fraudulent claims to Medicare for services that beneficiaries did not qualify for or need. From approximately November 2011 to March 2014, defendant, the above-named individuals, and others caused Medicare to pay Pathways at least $3.5 million for fraudulent home health care claims.

## **Maximum Statutory Penalties**

7.    Defendant understands that the charge to which she is pleading guilty carries the following statutory penalties:

a.    A maximum sentence of 10 years' imprisonment. This offense also carries a maximum fine of $250,000. Defendant further understands that the judge also may impose a term of supervised release of not more than three years.

7

b.     Defendant further understands that the Court must order restitution to the victims of the offense in an amount determined by the Court.

c.     In accord with Title 18, United States Code, Section 3013, defendant will be assessed $100 on the charge to which she has pled guilty, in addition to any other penalty or restitution imposed.

### Sentencing Guidelines Calculations

8.     Defendant understands that in determining a sentence, the Court is obligated to calculate the applicable Sentencing Guidelines range, and to consider that range, possible departures under the Sentencing Guidelines, and other sentencing factors under 18 U.S.C. § 3553(a), which include: (i) the nature and circumstances of the offense and the history and characteristics of the defendant; (ii) the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense, afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (iii) the kinds of sentences available; (iv) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (v) the need to provide restitution to any victim of the offense.

9.     For purposes of calculating the Sentencing Guidelines, the parties agree on the following points, except as specified below:

8

a.    **Applicable Guidelines**. The Sentencing Guidelines to be considered in this case are those in effect at the time of sentencing. The following statements regarding the calculation of the Sentencing Guidelines are based on the Guidelines Manual currently in effect, namely the November 2015 Guidelines Manual.

b.    **Offense Level Calculations**.

i.    The base offense level is 6, pursuant to Guideline § 2B1.1(a)(2).

ii.    The loss amount to Medicare is greater than $3,500,000 but not more than $9,500,000. Therefore, pursuant to Guideline § 2B1.1(b)(1)(J), the base offense level is increased by 18 levels.

iii.    The offense of conviction is a Federal health care offense involving a Government health care program and the loss amount to Medicare is more than $1 million. Therefore, the offense level is increased by 2 levels under Guideline § 2B1.1(b)(7).

iv.    Defendant was a manager or supervisor of the criminal activity and the criminal activity involved five or more participants. The offense level is therefore increased by 3 levels pursuant to Guideline § 3B1.1(b).

v.    The government's position is that defendant abused a position of trust in a manner that significantly facilitated the commission and concealment of the offense, increasing the offense level by 2 levels pursuant to

9

Guideline § 3B1.3. Defendant reserves the right to argue that this enhancement does not apply.

        vi.      Defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for her criminal conduct. If the government does not receive additional evidence in conflict with this provision, and if defendant continues to accept responsibility for her actions within the meaning of Guideline § 3E1.1(a), including by furnishing the United States Attorney's Office and the Probation Office with all requested financial information relevant to her ability to satisfy any fine or restitution that may be imposed in this case, a two-level reduction in the offense level is appropriate.

        c.    **Criminal History Category**. With regard to determining defendant's criminal history points and criminal history category, based on the facts now known to the government, defendant's criminal history points equal zero and defendant's criminal history category is I.

        d.    **Anticipated Advisory Sentencing Guidelines Range.** Therefore, based on the facts now known to the government, it is the government's position that the anticipated offense level is 29, which, when combined with the anticipated criminal history category of I, results in an anticipated advisory sentencing guidelines range of 87 to 108 months' imprisonment, in addition to any supervised release, fine, and restitution the Court may impose.

e.      Defendant and her attorney and the government acknowledge that the above guidelines calculations are preliminary in nature, and are non-binding predictions upon which neither party is entitled to rely. Defendant understands that further review of the facts or applicable legal principles may lead the government to conclude that different or additional guidelines provisions apply in this case. Defendant understands that the Probation Office will conduct its own investigation and that the Court ultimately determines the facts and law relevant to sentencing, and that the Court's determinations govern the final guideline calculation. Accordingly, the validity of this Agreement is not contingent upon the probation officer's or the Court's concurrence with the above calculations, and defendant shall not have a right to withdraw her plea on the basis of the Court's rejection of these calculations.

10.      Both parties expressly acknowledge that this Agreement is not governed by Fed. R. Crim. P. 11(c)(1)(B), and that errors in applying or interpreting any of the sentencing guidelines may be corrected by either party prior to sentencing. The parties may correct these errors either by stipulation or by a statement to the Probation Office or the Court, setting forth the disagreement regarding the applicable provisions of the guidelines. The validity of this Agreement will not be affected by such corrections, and defendant shall not have a right to withdraw her plea, nor the government the right to vacate this Agreement, on the basis of such corrections.

**Agreements Relating to Sentencing**

11

11. Each party is free to recommend whatever sentence it deems appropriate.

12. It is understood by the parties that the sentencing judge is neither a party to nor bound by this Agreement and may impose a sentence up to the maximum penalties as set forth above. Defendant further acknowledges that if the Court does not accept the sentencing recommendation of the parties, defendant will have no right to withdraw her guilty plea.

13. Regarding restitution, defendant acknowledges that the total amount of restitution owed to the victim is at least $3,500,000, minus credit for funds repaid prior to sentencing, with the precise amount to be determined by the Court at sentencing. Pursuant to Title 18, United States Code, Section 3663A, the Court must order defendant, together with any jointly liable co-defendants, to make full restitution in the amount outstanding at the time of sentencing.

14. Restitution shall be due immediately, and paid pursuant to a schedule to be set by the Court at sentencing. Defendant acknowledges that pursuant to Title 18, United States Code, Section 3664(k), she is required to notify the Court and the United States Attorney's Office of any material change in economic circumstances that might affect her ability to pay restitution.

15. Defendant agrees to pay the special assessment of $100 at the time of sentencing with a cashier's check or money order payable to the Clerk of the U.S. District Court.

16.     Defendant agrees that the United States may enforce collection of any fine or restitution imposed in this case pursuant to Title 18, United States Code, Sections 3572, 3613, and 3664(m), notwithstanding any payment schedule set by the Court.

17.     After sentence has been imposed on the count to which defendant pleads guilty as agreed herein, the government will move to dismiss the forfeiture allegation as to defendant.

### Acknowledgments and Waivers Regarding Plea of Guilty

### Nature of Agreement

18.     This Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in case 14 CR 732.

19.     This Agreement concerns criminal liability only. Except as expressly set forth in this Agreement, nothing herein shall constitute a limitation, waiver, or release by the United States or any of its agencies of any administrative or judicial civil claim, demand, or cause of action it may have against defendant or any other person or entity. The obligations of this Agreement are limited to the United States Attorney's Office for the Northern District of Illinois and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities, except as expressly set forth in this Agreement.

## Waiver of Rights

20.    Defendant understands that by pleading guilty she surrenders certain rights, including the following:

a.    **Trial rights**. Defendant has the right to persist in a plea of not guilty to the charge against her, and if she does, she would have the right to a public and speedy trial.

i.    The trial could be either a jury trial or a trial by the judge sitting without a jury. However, in order that the trial be conducted by the judge sitting without a jury, defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

ii.    If the trial is a jury trial, the jury would be composed of twelve citizens from the district, selected at random. Defendant and her attorney would participate in choosing the jury by requesting that the Court remove prospective jurors for cause where actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges.

iii.    If the trial is a jury trial, the jury would be instructed that defendant is presumed innocent, that the government has the burden of proving defendant guilty beyond a reasonable doubt, and that the jury could not convict her unless, after hearing all the evidence, it was persuaded of her guilt beyond a reasonable doubt. The jury would have to agree unanimously before it could return a verdict of guilty or not guilty.

14

iv.      If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, whether or not the judge was persuaded that the government had established defendant's guilt beyond a reasonable doubt.

v.      At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and her attorney would be able to cross-examine them.

vi.      At a trial, defendant could present witnesses and other evidence in her own behalf. If the witnesses for defendant would not appear voluntarily, she could require their attendance through the subpoena power of the Court. A defendant is not required to present any evidence.

vii.      At a trial, defendant would have a privilege against self-incrimination so that she could decline to testify, and no inference of guilt could be drawn from her refusal to testify. If defendant desired to do so, she could testify in her own behalf.

b.      **Appellate rights.** Defendant further understands she is waiving all appellate issues that might have been available if she had exercised her right to trial, and may only appeal the validity of this plea of guilty and the sentence imposed. Defendant understands that any appeal must be filed within 14 calendar days of the entry of the judgment of conviction.

15

21.     Defendant understands that by pleading guilty she is waiving all the rights set forth in the prior paragraphs, with the exception of the appellate rights specifically preserved above. Defendant's attorney has explained those rights to her, and the consequences of her waiver of those rights.

### Presentence Investigation Report/Post-Sentence Supervision

22.     Defendant understands that the United States Attorney's Office in its submission to the Probation Office as part of the Pre-Sentence Report and at sentencing shall fully apprise the District Court and the Probation Office of the nature, scope, and extent of defendant's conduct regarding the charge against her, and related matters. The government will make known all matters in aggravation and mitigation relevant to sentencing.

23.     Defendant agrees to truthfully and completely execute a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the Probation Office, and the United States Attorney's Office regarding all details of her financial circumstances, including her recent income tax returns as specified by the probation officer. Defendant understands that providing false or incomplete information, or refusing to provide this information, may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to Guideline § 3E1.1 and enhancement of her sentence for obstruction of justice under Guideline § 3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001 or as a contempt of the Court.

16

24.     For the purpose of monitoring defendant's compliance with her obligations to pay a fine and restitution during any term of supervised release or probation to which defendant is sentenced, defendant further consents to the disclosure by the IRS to the Probation Office and the United States Attorney's Office of defendant's individual income tax returns (together with extensions, correspondence, and other tax information) filed subsequent to defendant's sentencing, to and including the final year of any period of supervised release or probation to which defendant is sentenced. Defendant also agrees that a certified copy of this Agreement shall be sufficient evidence of defendant's request to the IRS to disclose the returns and return information, as provided for in Title 26, United States Code, Section 6103(b).

### Other Terms

25.     Defendant agrees to cooperate with the United States Attorney's Office in collecting any unpaid fine and restitution for which defendant is liable, including providing financial statements and supporting records as requested by the United States Attorney's Office.

26.     Defendant understands that, if convicted, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

27.     Defendant understands that the government has the right to seek defendant's truthful testimony before a grand jury or a district court.

17

## **Conclusion**

28.     Defendant understands that this Agreement will be filed with the Court, will become a matter of public record, and may be disclosed to any person.

29.     Defendant understands that her compliance with each part of this Agreement extends throughout the period of her sentence, and failure to abide by any term of the Agreement is a violation of the Agreement. Defendant further understands that in the event she violates this Agreement, the government, at its option, may move to vacate the Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this Agreement, or may move to resentence defendant or require defendant's specific performance of this Agreement. Defendant understands and agrees that in the event that the Court permits defendant to withdraw from this Agreement, or defendant breaches any of its terms and the government elects to void the Agreement and prosecute defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecutions.

30.     Should the judge refuse to accept defendant's plea of guilty, this Agreement shall become null and void and neither party will be bound to it.

31.     Defendant and her attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Agreement, to cause defendant to plead guilty.

32.     Defendant acknowledges that she has read this Agreement and carefully reviewed each provision with her attorney. Defendant further acknowledges that she understands and voluntarily accepts each and every term and condition of this Agreement.

AGREED THIS DATE: 9/7/2016

ZACHARY T. FARDON
United States Attorney

BROOKE HARPER
Trial Attorney

SHARON GULLA
Defendant

DENNIS GIOVANNINI
Attorney for Defendant

19